UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-447-TAV-HBG |
| | ) | |
| MOORE FREIGHT SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This declaratory judgment action is before the Court on Plaintiff's Motion for Summary Judgment [Doc. 68]. Defendants TA Operating LLC and Treston Harris, filed a response indicating no opposition [Doc. 69].[1] Defendant Patty Wilson, individually and as administrator for the Estate of Jerry Wilson, filed a response in opposition [Doc. 70], to which plaintiff replied [Doc. 71]. After careful consideration of the record and relevant law, and for the reasons set forth herein, the Court will grant plaintiff's motion for summary judgment.

**I.     Background**

This declaratory judgment action arises out of tort litigation filed by Patty C. Wilson ("Mrs. Wilson"), individually and as administrator of the Estate of Jerry Wilson, in the United States District Court for the Eastern District of Pennsylvania, civil action number 2:13-cv-01093 (the "underlying tort action") [Doc. 27 ¶ 13]. The underlying tort

---

[1] The Court notes it dismissed Treston Harris from this action for lack of personal jurisdiction [Doc. 58].

action arises from the alleged personal injury and wrongful death of Jerry Wilson ("Mr. Wilson") on or about October 17, 2011 [*Id.* ¶ 16].

According to the allegations in the underlying tort action, Moore Freight Service Inc. ("Moore Freight") hired Mr. Wilson to haul glass [*Id.* ¶ 17]. Moore Freight provided Mr. Wilson with trailer #211857 TN Reg #U256293 to transport the glass [*Id.*]. Mr. Wilson "was using the trailer . . . in the course and scope of occupation" [Doc. 27-2 ¶ 38].

On October 27, 2011, Mr. Wilson allegedly noticed that "the braking system of his trailer started smoking and/or caught fire" [*Id.* ¶ 30]. Mr. Wilson "pulled to the side of the road, got out of his vehicle and while responding to the stressful emergency his heart stopped beating and he died" [*Id.*].

Prior to October 27, 2011, plaintiff Canal Insurance Company issued a commercial automobile policy, policy number PIA0639650, to defendant Moore Freight (the "Policy") [Doc. 27 ¶ 20]. The Policy is the subject of this motion for summary judgment. Plaintiff asserts that, under two exclusions in the Policy, it has no duty to defend or indemnify Moore Freight in the underlying tort action.

**II.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris*

*Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.   Analysis**

Plaintiff argues it has no duty to defend or indemnify in the underlying tort action because the Policy's employee-indemnification exclusion excludes coverage for injuries sustained by an employee of Moore Freight, and Mr. Wilson was an employee of Moore Freight.  Plaintiff also argues it has no duty to defend or indemnify in the underlying tort action because the Policy's workers' compensation exclusion excludes coverage for injuries eligible for workers' compensation benefits, and Mr. Wilson's injuries were so eligible.

   **A.   Choice of Law Analysis**

Before the Court addresses the Policy, the Court must examine what law governs this dispute.  Plaintiff advocates for Tennessee law, while Mrs. Wilson advocates for Pennsylvania law.

This is a diversity action; thus, state substantive law governs. *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 894 (6th Cir. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court is required to apply the choice-of-law rules of the state in which it sits. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).  "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" *Charles Hampton's A–1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006) (quoting *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)); *accord Yarnell v. Transamerica Life Ins. Co.*, 694 F. Supp. 2d 857, 861 (E.D. Tenn. 2010).  This rule

embodies the traditional "*lex loci contractu*" choice-of-law theory. *See Std. Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 n.1 (Tenn. Ct. App. 1998).

No party has identified any choice-of-law provision in the Policy, but plaintiff asserts the Policy was "negotiated, drafted, entered into, and issued to Moore Freight in Knoxville, Tennessee" [Doc. 68-2 p. 7–8]. Mrs. Wilson asserts she is "without sufficient information or belief as to whether this factual averment is true" [Doc. 70 p. 2]. Mrs. Wilson, however, fails to demonstrate a genuine dispute in this regard, and she does not request additional discovery so that she may obtain this information. *See* Fed. R. Civ. P. 56(c), (d). Plaintiff, on the other hand, has submitted an affidavit made on personal knowledge that sets out facts demonstrating the Policy was made and delivered in Tennessee [Doc. 68-2 p. 7–9]. The Court therefore determines there is no genuine dispute regarding where the Policy was made and delivered; that is, Tennessee. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to property address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"). Thus, the Court will apply Tennessee law.

  **B.** **Analysis of the Policy**

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language[.]" *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give

5

effect to the intent of the parties.'" *Id.* (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386–87 (Tenn. 2009)). As the Sixth Circuit has noted:

> If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language, and any uncertainties or ambiguities in an insurance policy must be construed strongly against the insurer and in favor of the insured. A strained construction may not be placed on the language used to find ambiguity where none exists, and a contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.

*Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559, 562 (6th Cir. 2012) (alterations, quotation marks, and citations omitted).

Regarding clauses that exclude coverage, Tennessee has determined they "should be strictly construed against the insurer but in light of their apparent purpose." *Nat'l Ins. Ass'n v. Simpson*, 155 S.W.3d 134, 138 (Tenn. Ct. App. 2004) (citations omitted). "When the purpose of an exclusion can be ascertained, the courts should avoid construing the language of the exclusion so narrowly that its purpose is undermined." *Id.* (footnote omitted) (citing *Std. Fire*, 972 S.W.2d at 8).

### 1. Employee-Indemnification Exclusion

Plaintiff asserts it has no duty to defend Moore Freight in the underlying tort action because the Policy excludes coverage for "bodily injury" to "[a]n 'employee' of the 'insured' arising out of and in the course of: (1) [e]mployment by the 'insured'; or (2) [p]erforming the duties related to the conduct of the 'insured's' business" [Doc. 1-2 p.

6

35]. The exclusion applies "[w]hether the 'insured may be liable as an employer or in any other capacity" [*Id.*]. "Employee" is defined in the Policy as the following:

> "Employee" includes a "leased worker". "Employee" also includes any individual, other than an employer, who is *employed by* an employer and who is in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of *operating a commercial motor vehicle*), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment. "Employee" does not include a "temporary worker".

[*Id.* at 93 (emphasis added)]. This definition of employee in the Policy is identical to the definition of "employee" in the Federal Motor Carrier Safety Act, which Tennessee has adopted. 49 C.F.R. § 390.5; Tenn. Comp. R. & Regs. 1340-06-01-.08; *see also Miller v. Northland Ins. Co.*, No. M2013-00572-COA-R3-CV, 2014 WL 1715076, at *2 n.5 (Tenn. Ct. App. Apr. 29, 2014).

Mrs. Wilson argues the exclusion for bodily injury does not apply because Mr. Wilson was not an "employee" of Moore Freight. She asserts Mr. Wilson "could not have been 'operating a commercial vehicle' at the time of his death" as he "was not in the vehicle" [Doc. 70 p. 15]. Mrs. Wilson further argues Mr. Wilson was not "employed by" Moore Freight [*Id.* at 18]. Because "employed" is not defined in the Policy, Mrs. Wilson looks to Webster's dictionary, which defines "employed" as "to provide with a job that pays wages or salary" [*Id.*]. She argues Mr. Wilson did not receive wages or salary from Moore Freight [*Id.*].

7

Despite Mr. Wilson being outside of the commercial motor vehicle, the Court finds there is no genuine issue of material fact regarding whether Mr. Wilson was operating the vehicle—he was. In reaching this conclusion, the Court finds instructive those cases examining the Federal Motor Carrier Safety Act's definition of the term "employee." Upon review of those cases, the Court notes many courts have held injured non-drivers fall within the definition of "employee." *See Ooida Risk Retention Grp., Inc. v Williams*, 579 F.3d 469, 471, 475–76 (5th Cir. 2009) (finding that tandem driver "who was occupying the rig's sleeper berth" was statutory employee under § 390.5); *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 364–67 (5th Cir. 2002) (same). And courts have held drivers injured while outside of the vehicle also fall within the definition of "employee." *See Lancer Ins. Co. v. Newman Specialized Carriers, Inc.*, 903 F. Supp. 2d 1272, 1274, 1278–81 (N.D. Ala. 2012) (finding that driver who was injured while unloading material from the trailer was an employee). Thus, one need not be driving the commercial motor vehicle to be "operating" it. *But see Pouliot v. Paul Arpin Van Lines, Inc.*, 292 F. Supp. 2d 374, 379 (D. Conn. 2003) (finding that "operating" means "driving").

Mr. Wilson was not driving and was outside of the vehicle at the time of his injury. Moore Freight hired Mr. Wilson to drive the vehicle and deliver glass, but in the course of driving the vehicle, Mr. Wilson noticed the brakes started smoking or had caught fire. He pulled the vehicle over to the shoulder, got out of his vehicle, and while responding to the stressful emergency, he died as a result of his heart failure. Even though he was outside of the vehicle, the Court finds he did not cease operating the

8

vehicle. Undisputedly, he got out of the vehicle so that he could ensure the vehicle's operability. The Court thus finds Mr. Wilson was "operating the commercial motor vehicle" at the time of his death. *See Miller*, 2014 WL 1715076, at *3 (finding that co-driver sitting in passenger seat was an employee because she was "'in the course of operating a commercial vehicle'"); *United Fin. Cas. Co. v. Abe Hershberger & Sons Trucking Ltd.*, No. 11AP-629, 2012 WL 457715, at *5 (Ohio Ct. App. Feb. 14, 2012) ("Nothing in section 390.5 limits an independent contractor's status as a statutory employee to times when the individual is actually operating the commercial motor vehicle.").

Mrs. Wilson further argues Mr. Wilson was not an "employee" because he was not "employed by" Moore Freight. But the Court finds this argument unpersuasive. First, to the extent Mrs. Wilson claims Mr. Wilson did not receive "wages or salary" from Moore Freight, the Court notes Mr. Wilson in fact received money payments for his labor and services [*See* Doc. 68-2 p. 12]. Second, even if Mr. Wilson was an independent contractor under the common-law definition—a determination the Court does not make—courts have noted the federal regulation eliminated the common-law distinction between employees and independent contracts "to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public." *P.W. & Sons*, 307 F.3d at 366; *see also Miller*, 2014 WL 1715076, at *1 n.2 (concluding that the court "need not address" whether individual was "an independent contractor under Tennessee law" because pertinent definition is one contained in the insurance policy); *United Fin. Cas. Co.*, 2012 WL 457715, at *5 ("Because an employee

9

under section 390.5 must be "employed by an employer," the term "employed" cannot be read to exclude independent contractors."); *Canal Indemnity Ins. Co. v. TexCom Transportation, LLC*, No. 3-09-CV-1430-BD, 2010 WL 2301007, at *4–5 (N.D. Tex. June 4, 2010) (finding that an alleged independent contractor was an employee under the definition).

Accordingly, because the Court finds Mr. Wilson was an employee of Moore Freight under the definition set forth in the Policy who sustained a bodily injury arising out of and in the course of his employment by Moore Freight, the Court finds there is no coverage under the Policy for his injuries. Thus, plaintiff has no duty to defend Moore Freight in the underlying tort action. *See Cincinnati Ins. Co. v. Grand Pointe, LLC*, No. 1:05-CV-161, 2006 WL 1806014, at *4–9 (E.D. Tenn. June 29, 2006) (stating that "[u]nder Tennessee law, an insurance company's duty to defend its insured is triggered by a complaint that alleges a potential basis for the claimant to recover against the insured that is within the risk insured against" (footnote and citation omitted)). And because plaintiff has no duty to defend, plaintiff has no duty to indemnify. *Id.* ("Since Cincinnati has no duty to defend, "[i]t logically follows . . . there is no duty to indemnify." (alteration in original) (quoting *Standard Const. Co., Inc. v. Md. Cas. Co.*, No. 01-2006V, 2002 WL 1477886, at *5 (W.D. Tenn. Apr. 23, 2002))).

### 2. Workers' Compensation Exclusion

After Mr. Wilson's death, Mrs. Wilson, as administrator of Mr. Wilson's estate, made a claim in North Carolina for workers' compensation benefits [Doc. 68-2 p. 3]. The claim was settled [*Id.*]. Given that the Policy coverage "does not apply to . . . [a]ny

obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation . . . law or any similar law" [Doc. 1-2 p. 35–36], plaintiff asserts it has no duty to defend or indemnify in the underlying tort action [Doc. 68-1 p. 14–15].

Mrs. Wilson argues she can recover for emotional and psychological loss in the underlying tort action, but she could not have in the North Carolina workers' compensation case or under Pennsylvania workers' compensation laws [Doc. 70 p. 19]. But this argument is without merit under the plan language of the Policy. The exclusion applies when Moore Freight or Moore Freight's insurer may be held liable under any workers' compensation law; the exclusion applies regardless of the extent or type of benefits recoverable under workers' compensation laws.

Thus, the Court finds plaintiff has no duty to defend Moore Freight in the underlying tort action for this reason as well. *See Hanover Ins. Co. v. Jones*, 979 F. Supp. 2d 1210, 1216–17, 1219 (D. Kan. 2013) (finding that workers' compensation exclusion excluded coverage to family members of employee who received workers' compensation benefits for death of employee); *XL Ins. Am., Inc. v. Ortiz*, 673 F. Supp. 2d 1331, 1344 (S.D. Fl. 2009) (finding that workers' compensation exclusion excluded coverage for employee who had received over $270,000 in workers' compensation benefits).

## IV. Conclusion

For the reasons set forth herein, the Court will **GRANT** plaintiff's Motion for Summary Judgment [Doc. 68]. Plaintiff has no duty to defend or indemnify Moore Freight in the underlying tort action because the employee-indemnification and workers' compensation exclusions apply.

ORDER ACCORDINGLY.

<u>s/ Thomas A. Varlan</u>
CHIEF UNITED STATES DISTRICT JUDGE